# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE,**<br>30 N. Raymond, Third Floor<br>Pasadena, CA 91103<br><br>**Plaintiff,**<br><br>vs.<br><br>**AFTAB PUREVAL, in his official capacity as Clerk of the Hamilton County Court of Common Pleas,**<br>Hamilton County Clerk of Courts<br>1000 Main Street, Room 315<br>Cincinnati, OH 45202<br><br>**Defendant.** | CIVIL ACTION NO. 21-CV-197<br><br>JUDGE:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Courthouse News Service ("Courthouse News" or "CNS"), by and through its undersigned attorneys, alleges the following in support of its Complaint for Injunctive and Declaratory Relief against Defendant Aftab Pureval, in his official capacity as Clerk of the Hamilton County Court of Common Pleas ("Defendant").

## INTRODUCTION

1. The First Amendment provides the press and public with a presumptive right of timely access to civil complaints filed with the court. This right of access attaches to new complaints upon filing which occurs at the time of receipt. Where the right of access applies, it must be contemporaneous. Such access is fundamental to the press and public; it is essential to accurate and fair news reporting of civil court actions, and thus vital to the public's ability to discuss what is happening in an important branch of government. Delayed access inhibits that

discussion.

2. Courts across the country have recognized that the presumptive right of access attaches to judicial documents, including civil complaints, upon filing. When a complaint is withheld, the news it contains grows stale and the public is left unaware that a case has been filed and that the powers of the judicial branch of government have been invoked.

3. A new civil complaint is filed with the Hamilton County Court of Common Pleas ("HCCCP") when it is received by the clerk. But Defendant enforces a policy and practice of withholding access to new civil complaints from the time they are received until after they are processed by court staff. Processing takes time. It consists of clerical activity, including "filing cleanup."

4. Defendant in effect seals the new complaints until their news value has diminished or disappeared through his policy of "no-access-before-process." Similar no-access-before-process policies have been deemed unconstitutional in a series of cases brought by Courthouse News. In 2009, the U.S. District Judge Melinda Harmon of the Southern District of Texas struck down the Harris County clerk's policy delaying access to new e-filed complaints until after docketing. In 2016, the U.S. District Judge Edgardo Ramos of the Southern District of New York enjoined the policy of the Manhattan trial court clerk denying press and public access while new filings were being "reviewed and logged." In 2020, U.S. District Judge Henry Coke Morgan Jr. of the Eastern District of Virginia struck down a policy in Norfolk and Prince William counties that delayed access to new paper filings so that the court could first docket and scan them. In 2021, U.S. District Judge Dolly Gee in Central District of California declared a right of access to new civil complaints when received, before processing.

5. Courthouse News is informed and believes that HCCCP built its own e-filing

system and it shares basic characteristics common to all e-filing systems: (i) the filer goes through a set of screens online that require a selection of court, case type and the payment of fees; (ii) the filer then sends that information with a PDF document into an e-file manager ("EFM"), sometimes called a "catcher's mitt"; (iii) the EFM automatically assigns a transaction number and delivers the information and PDF into a clerk review queue; (iv) the documents sit in the review queue while they wait for court staff to process them; and (v) once processed, the documents move to the docket or "case management system."

6. Many state courts and most federal courts provide access when the new complaint is caught by the catcher's mitt, before it is clerically processed. That point of access mirrors the traditional point of access to paper filings, when they were received, before they were docketed.

7. Defendant's no-access-before-process policy results in regular delays in access to new complaints. Since the beginning of 2020 through February 2021, there have been several months in which Defendant withheld access to *more than 40%* of new e-filed civil complaints for at least one court day, with many complaints withheld for two or more court days. In fifteen weeks during that period, Defendant has withheld *more than 50%* of the new complaints on the day of filing. These delays are unnecessary and easily avoidable, as demonstrated by the federal and state courts across the country that provide access upon receipt. Likewise, Defendant can provide on-receipt access, but has chosen not to.

8. Since 2012, Courthouse News has requested timely access from a succession of two HCCCP clerks. The latest on that list is Defendant who, like the one before him, has refused Courthouse News' request. Like the previous clerk, he continues to withhold access to new e-filed complaints until after processing. As a result, Courthouse News continues to see significant delays in access to new civil complaints filed in HCCCP.

9. Courthouse News brings this action to address a violation of the First Amendment and seeks declaratory and injunctive relief.

## JURISDICTION AND VENUE

10. The claims Courthouse News asserts in the Complaint arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983-1988. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief).

11. Venue is appropriate in this judicial district of the United States District Court for the Southern District of Ohio under 28 U.S.C. § 1391(b) because Defendant resides in Ohio and is employed in this district by the Hamilton County Court of Common Pleas. Venue is also appropriate because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this district, specifically at the Hamilton County Court of Common Pleas.

## THE PARTIES

12. Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. Courthouse News now employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

13. Defendant Aftab Pureval, as the Clerk of Courts for the Hamilton County Court of Common Pleas, is being sued in his official capacity as the Clerk. The Clerk is responsible for, among other things, the administration of court records at HCCCP. According to the Clerk's official website, the "Hamilton County Clerk of Courts is the official record keeper and agent of Hamilton County's Justice System." *About the Clerk's Office*, Aftab Pureval, Hamilton County Clerk of Courts, https://www.courtclerk.org/general-information/about-the-clerk/about-the-

4

clerks-office/ (last visited Mar. 21, 2021). The website also lists the services the Clerk's office provides. The very first service listed is to "[p]rovide public access to the records of the Court in Hamilton County." *Id.*

14. Acting in his official capacity, Defendant, and the clerks acting under his direction and supervision, are directly involved with and/or responsible for the delayed access to newly filed complaints experienced by Courthouse News and other members of the press. Such acts reflect the official policies and practices of Defendant's office as a whole.

15. Defendant's actions, as alleged in this Complaint, are under the color of Ohio law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. On information and belief, Defendant Aftab Pureval's primary place of employment is in Hamilton County, Ohio.

16. Defendant is sued in his official capacity only. Courthouse News seeks relief against Defendant as well as his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him or at his direction or under his control.

## FACTUAL ALLEGATIONS

17. Courthouse News has challenged access take-aways by state courts as they adopted electronic filing in recent years. Following the Ninth Circuit's ruling in *Planet III*, 947 F.3d. at 590, which case had been in litigation for a decade, Courthouse News again wrote to Defendant. On January 26, 2021, Courthouse News sent a written request for on-receipt access to new, public court filings.[1] On February 11, 2021, Courthouse News notified HCCCP and its presiding judge of the Defendant's lack of response and the existing delays in direct access to new e-filed civil complaints.[2] After being informed that Courthouse News' request was referred to HCCCP's

---

[1] (Letter to Aftab Pureval, attached as Exhibit A).
[2] (Letter to Judge Jody Luebbers, attached as Exhibit B).

technology committee, Courthouse News also notified the judge leading the technology committee on March 5, 2021.[3]

18. Despite the efforts of Courthouse News, the Defendant has failed to implement a system to ensure on-receipt access to the newly filed civil complaints.

**A. Courthouse News' Reporting Activities**

19. Courthouse News publishes a variety of publications that include New Litigation Reports containing original, staff-written summaries of significant new civil petitions or complaints. In Ohio, Courthouse News publishes 4 New Litigation Reports: the CNS Cincinnati Report, the CNS Central Ohio Report, the CNS Cleveland State Report, and CNS Cleveland Federal Report. The CNS Cincinnati Report provides coverage of new litigation throughout the southern third of Ohio, including Hamilton and Montgomery counties, as well as Boone, Campbell, and Kenton counties in Kentucky.

20. Courthouse News also publishes the *Daily Brief*, which covers published appellate rulings in state and federal courts, including the appellate courts in Ohio, the U.S. Supreme Court and federal circuit courts, as well as significant rulings from the federal district courts. Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday. The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day, and rotated on and off the page on a 24-hour news cycle.

21. Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: *ABA Journal*, *ABC News*, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The*

---

[3] (Email to Judge Chris Wagner, attached as Exhibit(s) C1 and C2).

*Dallas Morning News*, Fox News, *Houston Chronicle*, *Los Angeles Times*, National Public Radio; NBC News, *The New York Times*, Politico, *Rolling Stone*, *Salt Lake City Tribune*, *The Wall Street Journal*, *The Washington Post*, *USA Today*, *U.S. News and World Report*.

22. Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices and news outlets such as: The Associated Press, *Austin American-Statesman The Atlanta Journal Constitution*, *The Boston Globe*, CNN, T*he Dallas Morning News*, *Detroit Free Press*, *Honolulu Civil Beat*, *Las Vegas Review Journal*, *Los Angeles Times*, *Portland Business Journal*, *St. Paul Business Journal*, *The Salt Lake Tribune*, *The San Jose Mercury News*, *Tampa Bay Business Journal*, Variety, Walt Disney Company and Warner Bros.

23. In Ohio, the Courthouse News litigation reports cover civil complaints, focusing on those against business institutions and public entities. Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the individual is famous or notorious. Larger courts, such as Hamilton County and Cuyahoga County, are covered daily with reports emailed to subscribers nightly.

24. To prepare the New Litigation Reports and identify new cases that may warrant a website article, Courthouse News' reporters review complaints filed with the court that day. Courthouse News does not seek to review or report on the tiny fraction of new civil complaints that are sealed or statutorily confidential. Given the nature of news coverage and the Courthouse News publications, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up the reporting on factual and legal controversies for subscribers and readers.

25. Courthouse News began covering Ohio courts in 2003 – in the paper era – when both state and federal courts gave the press access to newly filed civil complaints as they crossed

the counter in the clerk's office, when the news they held was fresh. This nationwide tradition of access was observed by HCCCP and the Northern and Southern Districts of Ohio.

26. In those paper years, the HCCCP clerk gave the press and public access to new paper complaints as soon as they crossed the counter, before they were docketed. When the new complaint crossed the counter, the intake clerk placed a copy of the complaint in a black, plastic tray which remained on top of the clerk's counter, year in and year out, where the complaints were freely available for review. After switching to e-filing, the HCCCP clerks abandoned tradition and pushed press access behind docketing (also called "processing").

27. Nearly all federal district courts and many state courts provide access to new civil complaints on receipt. HCCCP could also do so but does not. Instead, the Defendant withholds the complaints until after court staff have processed them, in effect sealing them until clerical tasks are completed. As a direct result, there are significant delays between when a new complaint is e-filed and when it can be seen by the press and public.

28. Prior to commencing this action, Courthouse News tracked and compiled access data for civil complaints e-filed at HCCCP. The data notes delays between when each complaint was received by the court and when each complaint was made public.

29. From January 1, 2020, through the end of February 2021, Courthouse News tracking showed that delays in access at HCCCP were regular and pervasive. Over that period, an average of 41% of newly e-filed civil complaints were withheld from public access for at least one court day and about 11% were withheld at least two days.

### B. Part I: First Amendment Right of Access Attaches to New Civil Complaints

30. Analysis of a First Amendment right of access claim is based on two steps. The first is to determine whether a right of access attaches and, if the right attaches, to determine

whether suppression of that right serves an overriding interest and is narrowly tailored. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*"Press Enterprise II"*); United *States v. Miami Univ.*, 294 F.3d 797, 821 (6th Cir. 2002). ("We turn to the two-part test applied by the courts when determining whether a qualified right of First Amendment access attaches in a particular situation.")

31. As to the first part of the test, the First Amendment to the U.S. Constitution and the analogous provisions of Sections 11 and 16 of Article I of the Ohio Constitution create a presumptive right of public access where (1) the information sought has "historically been open to the press and general public," and (2) "public access plays a significant positive role in the functioning of the particular process in question." *United States v. Miami Univ.*, 294 F.3d 797, 821 (6th Cir. 2002), citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986); see also *State ex rel. Scripps Howard Broad. Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.*, 73 Ohio St. 3d 19, 20, 652 N.E.2d 179 (1995).

32. The first federal judge to consider the situation of a state court clerk withholding access in the transition to e-filing was U.S. District Judge Melinda Harmon in Houston in 2009. "The First Amendment to the United States Constitution prohibits any law 'abridging the freedom of . . . the press.' It requires a presumption of openness of both the courtroom and court files. "*Courthouse News Serv. v. Jackson*, C.A. No. H-09-1844, 2009 WL 2163609 (S.D. Tex. July 20, 2009), citing *United States v. Valencia*, No. CRIM H-04-514 SS, 2006 WL 3707867, * 5 (S.D. Tex. Aug. 25, 2006) (citing *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849-50 (5th Cir. 1993); *In re Gannett News Serv., Inc.*, 772 F.2d 113, 115-116 (5th Cir. 1985)).

33. The U.S. Supreme Court and the Sixth Circuit have confirmed that a right of access applies to judicial records, "[T]he courts of this country recognize a general right to inspect and

copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983) (finding that the First Amendment limits judicial discretion to seal documents in civil case).

34. Historically, journalists covering HCCCP could review new complaints filed in paper form at the clerk's counter. "There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints." *Courthouse News Service v. Schaefer*, 440 F. Supp. 3d 532, 559 (E.D. Va. 2020; *accord Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016).

35. A "significant positive role" is played by public access to the new civil complaints because the new complaint serves as the opening attack in a legal battle, just as this complaint does. As a result, new civil complaints are a traditional source of news. The ability to be informed about those contests serves a significant positive role in our democracy. "Logical considerations also support a presumption of public access," *Bernstein*, 814 F.3d 132, 141. The right to review new civil complaints "is an indispensable predicate to free expression about the workings of government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785, 787 (9th Cir. 2014) ("*Planet I*"). *Accord, Courthouse News Service v. Schaefer*, 440 F. Supp. 3d 532, 557-559 (E.D. Va. 2020) ("the Court finds that the experience and logic test is satisfied and finds that the public and press enjoy a qualified First Amendment right of access to newly filed civil complaints").

36. News coverage operates in a daily cycle where newsworthy events, such as newly filed civil complaints, occur during the day and are reported that same afternoon and evening, only to start the cycle again the next day. Where news is delayed until the next day or longer, it is

devalued and less likely to be reported. In other words, delayed news becomes "old news."

37. Recognizing this, a broad range of federal courts have said that once the right of access attaches, it must be contemporaneous. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) ("The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression."); *Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("Because the public benefits attendant with open proceedings are compromised by delayed disclosure of documents, we … emphasize that the public and press generally have a contemporaneous right of access to court documents"); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989); ("[E]ven a one to two day delay impermissibly burdens the First Amendment."); *Courthouse News Service v. Planet*, No. 11-cv-8083, Amd. Judgment for Dec. Relief and Perm. Injunction, Doc. No. 270, p. 1 (C.D. Cal., Jan. 26, 2021) ("There is a qualified First Amendment right of timely access to newly filed civil complaints," and that right "attaches when new complaints are received by a court, rather than after they are 'processed,' – i.e. rather than after the performance of administrative tasks that follow the court's receipt of a new complaint.").

38. In a First Amendment action over a no-access-before-process policy enforced by Milton Tingling, the state court clerk in Manhattan, U.S. District Judge Edgardo Ramos ruled from the bench, "In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous. The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression. Each passing day may constitute a separate and cognizable

11

infringement of the First Amendment." *Courthouse News Serv. v. Tingling*, No. 16-cv-08742, 2016 WL 8739010, at *19 (S.D.N.Y. Dec. 16, 2016) New York state courts then began providing on-receipt access to new e-filed civil complaints through a public website.

C. **Part II: Defendant Does Not Have an Overriding Reason for Withholding Access; His No-Access-Before-Process Policy is Not Narrowly Tailored**

39. Turning to the second analytical step under *Press Enterprise II*, once the Court determines the right of access attaches, a presumption of openness arises which can only be overcome by a showing that "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Press- Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60.; *United States v. Edwards*, 823 F.2d 111, 115 (5th Cir. 1987) (citing *Press II*, 478 U.S. at 14-15). (Right of access can only be overcome by an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."); *accord Jackson*, ("It is the defendant's burden to overcome this presumption," citing *Press II*, 478 U.S. at 14.)

40. In *Press Enterprise II*, the principle competing with the right of access was the right to a fair trial. Here the right Defendant seeks to enforce is "filing cleanup."[4] Filing cleanup does not override the First Amendment right of access. Defendant's no-access-before-process policy, which denies access to *all* complaints and other judicial records until after processing by the clerk's office, is the sort of "blanket prohibition on the disclosure of records" that "implicates the First Amendment." *Pokaski*, 868 F.2d at 505-06; *Planet III at 594*. "CNS's reporting on complaints must be timely to be newsworthy and to allow for ample and meaningful public discussion regarding the functioning of our nation's court systems. … [A] ban on reporting news

---

[4] (*Guide to Electronic Filing*, Aftab Pureval, Hamilton County Clerk of Courts, p. 25 (July 1, 2019), https://www.courtclerk.org/forms/userguide.pdf.) (Attached herein as Exhibit D).

12

'just at the time [the] audience would be most receptive' would be effectively equivalent to 'a deliberate statutory scheme of censorship.' …[T]he need for immediacy of reporting news is 'even more vital in the digital age,' where timeliness is measured in terms of minutes or seconds."

41. Further, Defendant's no-access-before-process policy is not narrowly tailored because it is easily avoidable, as courts across the nation give the press and the public on-receipt access to new e-filed complaints using a great variety of software systems (i.e. access before process). The vast majority of federal courts, including the U.S. District Courts for Northern and Southern Districts of Ohio, and many state courts have configured their e-filing systems to automatically release public civil complaints to the public at large as soon as the court receives them, weekday or weekend, day or night, remotely or at the courthouse.

42. A growing number of state courts also provide on-receipt access but take a different approach. They configure their e-filing systems to allow credentialed members of the press to see new e-filed complaints that sit in the clerk's queue, awaiting clerical action by court staff. By doing so, these state courts continue the tradition of providing press access to new complaints after they have crossed the clerk's intake counter and before they are docketed, enabling the press to review complaints on the day they are filed.

43. The access given in those courts goes by different names, but all share the common characteristic of on-receipt access to new public complaints. Los Angeles Superior Court, the largest court in the nation, provides such access through its "Media Access Portal," allowing review of the numerous, new e-filings upon receipt, before processing. The New York courts, including New York County Supreme Court in Manhattan, provide access through a "new cases" tab on a statewide e-filing portal, on receipt, before processing. Courts using Tyler Technologies software, in Georgia, Nevada and California give access through a "Press Review Queue," on

receipt, before processing. In Hawaii, a registered reporter receives on-receipt access at "eCourts Kokua," meaning "help" in the Hawaiian language.

44. While there are many variations in how the federal and state courts throughout this nation go about providing (and naming) these access points, the result is always the same. The timing of access is always *on receipt* when the news of new filings is fresh, the press can report on new complaints shortly after they are filed, and busy clerks can attend to their clerical tasks of processing new complaints as their schedules allow.

45. E-filing was designed to make the filing process more efficient. It should not take court transparency backwards. Instead of basic intake work being done by clerks at an intake window that work is now done by e-filing software. Filers use the e-filing system to enter case information, which is in compliance with the court's minimum submission requirements, before submitting their filings to the court. Instead of sitting in a physical bin next to an intake window, new e-filed complaints now sit in an electronic queue where they can be timely reviewed by members of the media.

46. In 2009, when the state court shift to e-filing was still nascent, Judge Harmon wrote in *Jackson,* "The Court is unpersuaded by Defendants' argument and finds that the delay in access to the newly filed petitions in this case is not a reasonable limitation on access." *Jackson*, C.A. No. H-09-1844, 2009 WL 2163609, at *4-5.

47. Likewise, this Court should find that Defendant's no-access-before-process policy, maintained in the face of easily available alternatives, violates Courthouse News' First Amendment right of timely access. Despite Courthouse News' repeated requests, Defendant has still failed to provide contemporaneous access to the newly filed civil complaints, and delays in access to new civil complaints at HCCCP are regular and pervasive due to Defendant's policy and

14

practice of withholding access to new e-filed complaints until after administrative processing.

48. Courthouse News seeks declaratory relief and an injunction prohibiting that policy and practice.

## COUNT ONE

### Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983

49. Courthouse News incorporates herein the allegations of Paragraphs 1-48 above.

50. Defendant's actions under color of state law, including without limitation his policy and practice of withholding newly filed civil complaints from press and public view until after administrative processing, and the resulting denial of timely access to new civil complaints upon receipt for filing, deprive Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

*51.* At Hamilton County Court of Common Pleas, the presumption of access to new civil complaints arises when those complaints are filed and may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Press-Enterprise*, 478 U.S. at 2, 106 S. Ct. at 2737, 92 L. Ed. 2d 1 (1986). For Defendant's no-access-before-process-and-review policy to "survive *Press-Enterprise*'s two-prong balancing test" (i.e., "rigorous" scrutiny), Defendant "must demonstrate that there is a 'substantial probability' that its [asserted] interest[s]… would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." *Planet*, 947 F.3d at 596. Like other clerks with no-access-before-process policies, the Defendant cannot satisfy this test.

52. Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendant's unconstitutional actions, and will suffer irreparable harm as a result of Defendant's violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a permanent injunction to prevent further deprivation of the First Amendment rights

15

guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

*WHEREFORE, Courthouse News prays for judgment against Defendant as follows:*

53. A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendant's policies and practices that knowingly effect delays in access to newly filed civil complaints, including, inter alia, his policy and practice of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to new civil complaints, which are public court records to which the First Amendment right of access applies;

54. A permanent injunction against Defendant, including his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him, or at his direction or under his control, prohibiting him from continuing his policies and practices that deny Courthouse News timely access to new civil complaints, including, *inter alia*, his policy and practice of denying access to complaints until after administrative processing;

55. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

56. All other relief the Court deems just and proper.

Dated: March 23, 2021

Respectfully Submitted,

*Of Counsel*:

GRAYDON HEAD & RITCHEY LLP
312 Walnut Street

/s/ *John C. Greiner*
John C. Greiner (0005551)
Alexandra M. Berry (0098176)
GRAYDON HEAD & RITCHEY LLP

| | |
|---|---|
| Suite 1800<br>Cincinnati, OH 45202<br>Phone: (513) 621-6464<br>Fax:     (513) 651-3836 | 312 Walnut Street, Suite 1800<br>Cincinnati, OH  45202<br>Phone:  (513) 629-2734<br>Fax:     (513) 333-4316<br>Email:   jgreiner@graydon.law |

*Counsel for Plaintiff Courthouse News Service*

10963223.3