**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:21-cv-00197 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| PAVAN PARIKH, in his official capacity as Clerk of the Hamilton County Court of Common Pleas, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 44, 45). These motions have been fully briefed. (Docs. 47, 48, 49, 50, 51, 54).

Pursuant to S.D. Ohio R. Civ. 7.1(b)(2), oral argument is not "deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented."

## I. Background

The parties agree that there are no genuine issues of material fact. (Doc. 48, PAGEID 2813). Plaintiff Courthouse News Service ("Courthouse News") is a nationwide news service which reports on civil litigation in all fifty states. (Doc. 1, ¶ 12). Courthouse News coverage includes Hamilton County, Ohio. Defendant Pavan Parikh is the current Clerk of the Hamilton County Court of Common Pleas ("the Clerk"). Courthouse News claims that when new civil complaints are electronically filed, the Clerk does not allow the press access to those complaints until after court staff have docketed them. Courthouse

News claims that from January 1, 2020, through the end of February 2021, an average of 41% of newly electronically-filed civil complaints were withheld from access for at least one court day and approximately 11% were withheld for at least two court days. (Id., ¶ 29). Courthouse News claims that the Clerk's "no-access-before-process" policy violates its right of timely access to public court records as secured by the First and Fourteenth Amendments of the United States Constitution. (Id., ¶¶ 1, 50)).[1] Courthouse News brings its claim pursuant to 42 U.S.C. § 1983. Courthouse News has filed similar lawsuits throughout the country for the past decade. *Courthouse News Serv. v. Omundson*, No. 24-6697, 2026 WL 2603864, at *3 (9th Cir. Sept. 3, 2026) (collecting cases).

The Clerk's filing process requires some careful explanation. While the parties and the witnesses have used different terms while describing the process, the Court will endeavor to create a description using consistent terms based on the evidence in the record.

To begin, it bears mentioning that Hamilton County implemented one of the first fully electronic filing systems in the country. (Doc. 43, Julie Dalton Decl., PAGEID 2729, ¶ 10). The original Case Management System ("CMS") began in October of 1997. (Doc. 43, Julie Dalton Decl., PAGEID 2727, ¶ 2). While CMS has evolved over the years, it is still a "homegrown" system. (Doc. 43, Julie Dalton Decl., PAGEID 2729, ¶¶ 10-12; Doc. 30, Julie Dalton Dep., PAGEID 262). Unlike some other court filing systems, the filing of a new complaint in CMS is not fully automated. (Doc. 43, Julie Dalton Decl., PAGEID 2739, ¶ 27). These fully automated systems are often referred to as "auto-accept."

---

[1]Courthouse News does not seek access to new civil complaints that are sealed or statutorily confidential. (Doc. 1, ¶ 24).

The following describes the "intake" stage of the filing of a new civil complaint in CMS. The Clerk's Office Issue Desk is responsible for intake. The Issue Desk is open Monday through Friday, 8:00 am to 4:00 pm, except for holidays. (Doc. 43, Julie Dalton Decl., PAGEID 2742, ¶ 34).

When complaints are manually submitted to the Clerk, an Issue Desk clerk reviews the filing, and then accesses CMS. (Doc. 43, Julie Dalton Decl., PAGEID 2731, ¶ 13). On the "Case Origination" screen in CMS, the Issue Desk clerk prompts CMS to create a case number for the case. (Doc. 43, Julie Dalton Decl., PAGEID 2731, ¶ 13). This case number is manually stamped on the complaint. (Doc. 43, Julie Dalton Decl., PAGEID 2731, ¶ 12). The Issue Desk clerk then enters information about the case into CMS, such as the filing code, the parties' names, and the attorney's Supreme Court number. (Doc. 43, Julie Dalton Decl., PAGEID 2731, ¶ 13). The Issue Desk clerk also manually processes payment. (Doc. 43, Julie Dalton Decl., PAGEID 2731, ¶ 13). Finally, the Issue Desk clerk puts a copy of the complaint in a bin where it is later scanned and indexed, which allows the case to be searchable in CMS by party name. (Doc. 43, Julie Dalton Decl., PAGEID 2732, 2737, ¶ 13, 22). Courthouse News has access to this bin and their reporter explained that he comes to the Clerk's Office "every day" to check this bin. (Doc. 35, Kevin Koeninger Dep., PAGEID 1118). Courthouse News has not raised any challenges based on their access to the new civil complaints in this bin.

When complaints are electronically submitted to the Clerk, the complaint enters an "e-submission queue." (Doc. 43, Julie Dalton Decl., PAGEID 2733, ¶ 18). There is an Issue Desk clerk in the Clerk's Office who is dedicated to reviewing the complaints in this queue. (Id.) The Issue Desk clerk clears the queue each day in the order the submissions

were received. (Id.) By local rule, the date and time the complaint is submitted becomes the "filing date" as long as the document is not rejected by the Clerk. (Doc. 43, Julie Dalton Decl., PAGEID 2734, ¶ 18).[2] To begin processing a new complaint, the Issue Desk clerk accesses CMS and uses the "Check Document" function to review the document, calculate the filing costs and check the accuracy of case information entered. (Doc. 43, Julie Dalton Decl., PAGEID 2735, ¶ 19). The Issue Desk clerk then manually processes payment through a third-party vendor and creates the case by clicking "Case Create" in CMS. (Id.) This then leads the Issue Desk clerk to the Case Origination screen, where the Issue Desk clerk prompts CMS to create a case number for the case. (Id.) This entire process generally takes a matter of minutes. (Doc. 43, Julie Dalton Decl., PAGEID 2735, ¶ 20). Indexing usually occurs on the next business day. (Doc. 43, Julie Dalton Decl., PAGEID 2737, ¶ 22). However, Courthouse News has been granted special access through the Clerk's website to view new complaints before they are indexed. (Doc. 43, Julie Dalton Decl., PAGEID 2741-2742, ¶ 32-33; Doc. 35, Kevin Koeninger Dep., PAGEID 1111-1112).

The Clerk does not consider a new civil complaint as being "filed" until the intake process in CMS is complete. (Doc. 43, Julie Dalton Decl., PAGEID 2739, ¶ 27). However, Courthouse News argues that the new complaint is filed when it is electronically submitted to the Clerk. Therefore, Courthouse News' constitutional claim is based on the delay between when a new civil complaint enters the "e-submission queue" and when the Issue Desk clerk completes the intake process. Courthouse News is seeking declaratory and injunctive relief along with an award of costs and reasonable attorneys' fees.

[2]The timestamps are retroactively applied pursuant to Loc.R. 34(B)(1)(e), Hamilton Cty. Ct. of Common Pleas.

## II. Analysis

### A. Standard of review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether this burden has been met by the movant, this Court views the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

This standard of review remains the same for reviewing cross-motions for summary judgment. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021) (citing *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013); *see also Harris v. City of Saginaw, Michigan*, No. 22-1504, 2023 WL 2569495, at *3 (6th Cir. Mar. 20, 2023) ("The district court correctly emphasized the hat switch courts perform when evaluating cross motions for summary judgment: In review of the *defendant's* motion, we accept the *plaintiff's* view of the facts as true and draw all reasonable inferences in favor of the *plaintiff*; in review of the *plaintiff's* motion, we accept the *defendant's* view of the facts as true and draw all reasonable inferences in favor of the *defendant*.") (emphasis in original).

### B. First Amendment

In setting forth the applicable constitutional principles, the Court has the benefit of this Court's decision in *Courthouse News Serv. v. O'Shaughnessy*, 663 F. Supp. 3d 810

(S.D. Ohio 2023) (Morrison, C.J.). In *O'Shaughnessy*, Courthouse News brought the same claims against the Clerk of the Court of Common Pleas for Franklin County, Ohio. *Id*. at 814. The legal issues were brought before the Court on a motion for preliminary injunction filed by Courthouse News. *Id*. at 812. This Court explained:

> The First Amendment provides a right of access to a judicial proceeding or record: (1) that "ha[s] historically been open to the press and general public"; and (2) where "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court* ("*Press II*"), 478 U.S. 1, 8–10, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). This test is known as the "experience and logic" test. *See id*. at 9, 106 S.Ct. 2735. "If both experience and logic indicate that a judicial record has in the past, and should in the future, be afforded public access, a qualified First Amendment right of public access attaches to it." *Courthouse News Service v. Schaefer*, 2 F.4th 318, 327 (4th Cir. 2021). This presumptive right to access cannot be overcome unless the government demonstrates a compelling interest in restricting access and any restriction is narrowly tailored. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 705 (6th Cir. 2002).

*Id*. at 815. As part of its analysis under the "experience and logic" test (also referred to as the first step of the *Press-Enterprise II* test), this Court concluded that "complaints have been traditionally accessible to the public and press" and this access plays a significant role in the functioning of the judicial process. *Id*. at 816-17.[3]

---

[3]The Tenth Circuit has provided this helpful roadmap which outlines the analysis for the two steps of the *Press-Enterprise II* test:

> In *Press-Enter. Co. v. Superior Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 8–9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), the Supreme Court formulated a two-part test for First Amendment right of access claims. Pursuant to the first step of the *Press-Enterprise* II analytical framework, we must determine whether a right of access attaches to a particular type of judicial proceeding or record. *Id*. To do so, we consider whether the following "considerations of experience and logic" are met: (1) under the "experience" prong, a judicial proceeding or record must "have historically been open to the press and general public," and (2) under the "logic" prong, public access must play a "significant positive role in the functioning of the particular process in question." *Id*. These considerations, taken together, are known as the "experience and logic" test.

As to the timing of when this right attaches, this Court found that in light of "the immediate consequences precipitated by filing a complaint," the press and public "have an important interest in reasonably contemporaneous access to civil complaints." *Id*. at 818 (quoting *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021)). This Court pointed to undisputed evidence in the record that 40.79% of the complaints submitted in Franklin County were withheld for three or more days and only 5.76% of complaints were available to Courthouse News on the day of receipt. *Id*. at 818.

As to whether the Franklin County Clerk could demonstrate a compelling interest in restricting access, this Court concluded that the Franklin County Clerk "failed to provide sufficient reason for the Court to conclude the errors caught and prevented by her office's Clerk Review process create a compelling interest for delay." *Id*. at 819. As to whether any restriction is narrowly tailored, this Court found that the Franklin County Clerk failed to demonstrate that the delays are merely "incidental" to the courts "administrative function that requires orderly processing of new filings." *Id*. at 820 (quoting *Courthouse News Serv. v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020) ("*Planet III*"). This Court explained that the Franklin County Clerk "offers no evidence that a one-, two-, three-, or more day delay in access (except in rare circumstances) is narrowly tailored to serve such

---

> If the "experience and logic" test is satisfied, a presumptive First Amendment right of access arises. *Planet III*, 947 F.3d at 590. However, "[t]he right to inspect and copy judicial records is not absolute"—it is qualified. *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306. Once this qualified right of access has been established, therefore, the court proceeds to the second step of the *Press-Enterprise II* framework to determine whether the restrictions on access satisfy constitutional scrutiny. *See Press-Enterprise II*, 478 U.S. at 9, 106 S.Ct. 2735. The second step of the *Press-Enterprise II* framework involves a balancing test that weighs the qualified right of access against the interests asserted by the party seeking to restrict access.

*Courthouse News Serv. v. New Mexico Admin. Off. of Cts*., 53 F.4th 1245, 1264 (10th Cir. 2022).

an interest and that no less restrictive means of achieving that interest exist." *Id*. Therefore, the Court granted the motion for preliminary injunction.[4] *Id*. at 820.

As in *O'Shaughnessy*, this Court finds that Courthouse News has a qualified First Amendment right of access to the newly filed, non-confidential civil complaints at issue here. This point was not disputed by the parties.

Instead, not surprisingly, just as in the other cases brought by Courthouse News, there is a question in this case of when the right to access attaches. The courts which have addressed this issue have concluded "that a First Amendment right to access civil complaints attaches when the complaint is filed (or submitted) to the court." *Courthouse News Serv. v. New Mexico Admin. Off. of Cts*., 53 F.4th 1245, 1266 (10th Cir. 2022) (collecting cases); *see also Courthouse News Serv. v. Omundson*, No. 24-6697, 2026 WL 2603864, at *7 (9th Cir. Sept. 3, 2026) ("the First Amendment right of public access to judicial documents attaches at the time that complaints are filed with the court by the litigant, or put differently, at the time that complaints are received by the court.").

However, the Clerk argues that under Ohio law, the right of access attaches when a document is accepted. The Clerk points to courts in Ohio which have held that filing is accomplished not only by delivery of the document to the clerk but requires that the document be brought to the "notice of the officer so that it can be accepted." (Doc. 48, PAGEID 2819 ) (citing *King v. Paylor*, 69 Ohio App. 193, 196, 23 O.O. 594, 38 Ohio Law Abs. 124, 43 N.E.2d 313 (Ohio Ct. App. 1942) and *King v. Penn*, 43 Ohio St. 57, 61, 1

[4]The parties later agreed to a consent order, which permanently enjoined "the Clerk from delaying access to newly e-filed, non-confidential civil complaints until after such complaints are processed and directs the Clerk to continue to make such complaints available upon receipt on a permanent basis, or until such time that the Clerk implements a different process or system that provides equal or similar access to newly e-filed non-confidential civil complaints upon receipt." *Courthouse News Serv. v. O'Shaughnessy*, No. 2:22cv2471 (Doc. 48, PAGEID 747).

N.E. 84, 86 (Ohio 1885) ("[w]hen a paper is in good faith delivered to the proper officer to be filed, and by him received to be kept in its proper place in his office, it is 'filed'")).

This argument does not pass muster under the experience and logic test. First, the Clerk recognizes an electronically submitted complaint as being filed when it enters e-submission queue. By local rule, the date and time the complaint enters the queue is the date and time it was filed unless the Clerk rejects the filing. Which leads to the second point. Even though a filing can be rejected or modified, a complaint cannot be "filed" only when the Clerk "says it is." *See Courthouse News Serv. v. O'Shaughnessy*, 663 F. Supp. 3d at 818. As one court has explained:

> "[T]he labels and terminology a state court employs to identify different parts of the filing process cannot have a determinative effect on when the First Amendment right of access attaches." *Cozine*, 2022 WL 593603, at *7. Otherwise, "court administrators could potentially ... abrogate the media's First Amendment right of access ... by adopting administrative rules that define a document as 'filed' much later in the judicial review process." *Id*.; *see Washington-S. Nav. Co. v. Baltimore & Philadelphia Steamboat Co*., 263 U.S. 629, 635-36, 44 S.Ct. 220, 68 L.Ed. 480 (1924) (noting that although "[t]he function of rules is to regulate the practice of the court and to facilitate the transaction of its business," "no rule of court can .... abrogate or modify the substantive law.").

*Courthouse News Serv. v. New Mexico Admin. Off. of Cts*., 53 F.4th 1245, 1267-68 (10th Cir. 2022); *see also Courthouse News Serv. v. Forman*, 606 F. Supp. 3d 1200, 1211 (N.D. Fla. 2022) (explaining that "it is the moment a document is filed, not the moment Florida labels it a 'court record,' that matters."). Therefore, an electronically submitted complaint is "filed" with the Clerk when it is submitted and enters the CMS e-submission queue.

Having now determined when the right of access "clock" starts running, the Court must determine if the delay in this case triggers constitutional scrutiny. In *Courthouse News Service v. Schaefer*, cited by this Court extensively in *O'Shaughnessy*, the Fourth

Circuit explained that this review is a "more relaxed scrutiny" akin to a "time, place and manner" restriction on protected speech. 2 F.4th 318, 328 (4th Cir. 2021). Under this analysis, "the public and press generally have a *contemporaneous* right of access to court documents and proceedings when the right applies." *Id*. (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014)). The Fourth Circuit explained that:

> "'contemporaneous' in this context means 'the same day on which the complaint is filed, insofar as is practicable;' and when not practicable, on the next court date" — excepting inconsequential deviations and extraordinary circumstances which may, without violating the constitution, delay access. This flexible standard does not require perfect or instantaneous access.

2 F.4th 318, 328 (4th Cir. 2021) (citation omitted); *see also id.* at 323 (affirming the district court's conclusion that clerks "must make newly filed civil complaints available on the same day of filing when practicable, and where not practicable by the end of the next court day."). Multiple courts have come to the same conclusion: right of timely access does not entitle the press to "immediate, pre-processing access to newly filed complaints." *Courthouse News Serv. v. N.M. Admin. Office of the Courts*, 53 F.4th 1245, 1271-72 (10th Cir. 2022) (quoting *Planet III*, 947 F.3d at 584). Instead, the right of timely access is a "flexible standard" which "provides courts with some leeway where same-day access would be impracticable, and fully exempts inconsequential delays and those caused by extraordinary circumstances." *Id*. (quoting *Schaefer*, 2 F.4th at 328). "This flexibility accords with precedent in recognizing that the Constitution does not require the impossible." *Id*.

The Clerk takes the position that delays in access should be calculated based on the hours his office is open for business. This would exclude nights, weekends, and holidays. Other courts have adopted this approach. *See, e.g.*, *Courthouse News Serv.*

*v. Harris*, No. CV ELH-22-0548, 2022 WL 17850125, at *40 (D. Md. Dec. 22, 2022) (reviewing delays in business hours). Although the Clerk's Office normally closes at 4:00, the Issue Desk clerk assigned to the e-submission queue stops reviewing filings shortly before 4:00 p.m. because they must balance their books before the end of each day. (Doc. 43, PAGEID 2742-2743, ¶ 34). Julie Dalton, the Clerk's Chief of Information Technology, explained that if a complaint is electronically submitted before 3:00 or 3:15 p.m., the expectation is that the Issue Desk clerk will complete the intake process that same day. (Doc. 30, Julie Dalton Dep., PAGEID 258, 324-25). Dalton explained that if a complaint is electronically submitted after 3:00 or 3:15 p.m, the complaint will be processed in the morning of the next business day. (Doc. 30, Julie Dalton Dep., PAGEID 324-25).

According to the Clerk's calculations, which are based on the hours the Clerk's Office is open for business, Courthouse News has access to newly filed complaints within 1.443 business hours, and nearly 98% of complaints are made available within one business day. (Doc. 30, Julie Dalton Depo., PAGEID 334-35 and Ex. E, PAGEID 690). Courthouse News does not dispute the accuracy of these numbers. Courthouse News also does not advocate for there to be a clerk available to process manually- or electronically-submitted complaints twenty-four hours a day. Instead, Courthouse News is seeking instantaneous access to electronically filed complaints. However, the caselaw is clear: there is no "unconditional First Amendment right to instantaneously access any newly filed complaint prior to any human review." *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 67 (2d Cir. 2025). Instead, as one court has explained:

> Determination whether the presumptive right of access matures into an actual right of access depends on whether the party imposing delays

> succeeds in showing justification under the second step of the *Press-Enterprise II* test. Under this second step, the entity seeking to withhold or delay public access must establish that its reason for doing so "is essential to preserve higher values and is narrowly tailored to serve that interest," *Press-Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. 2735 (quoting *Press-Enterprise I*, 464 U.S. at 510, 104 S.Ct. 819), a conclusion that must be justified by "specific, on the record findings," *id*. at 13, 106 S.Ct. 2735.

*Id*. Therefore, the Court moves forward in its analysis to the second step of the *Press-Enterprise II* test.

The Clerk explains that he has a compelling interest in the orderly administration of justice. (Doc. 50, PAGEID 2847). When addressing an interest in "the fair and orderly administration of justice," courts have framed the second step of the *Press-Enterprise II* test as follows: the state court must demonstrate that: (1) "there is a 'substantial probability' that its interest in the fair and orderly administration of justice would be impaired by immediate access"; and (2) "no reasonable alternatives exist to 'adequately protect' that government interest." *Courthouse News Serv. v. New Mexico Admin. Off. of Cts*., 53 F.4th 1245, 1270 (10th Cir. 2022) (quoting *Planet III*, 947 F.3d at 596).

Julie Dalton testified that it is the responsibility of the Clerk to give all complaints a case number in the order they are received, regardless of whether they are submitted manually or electronically. (Doc. 30, Julie Dalton Dep., PAGEID 408). Dalton explained that the Clerk is subject to annual audits to ensure that each case can be located by case number. (Doc. 30, Julie Dalton Dep., PAGEID 409). Dalton explained that it is important for the Issue Desk clerk to review electronically submitted complaints to verify the names of the parties because that information is used to create the case caption in CMS. (Doc. 30, Julie Dalton Dep., PAGEID 286). Dalton explained that the Issue Desk clerk also reviews the document submitted to ensure that it is signed and it is the correct document.

(Doc. 30, Julie Dalton Dep., PAGEID 284) ("People have filed their children's homework, being on a -- just choosing the wrong document."). Dalton explained that if a file is corrupted or there are other problems with the document submitted, the Issue Desk clerk will work with the attorney to correct the error so the filing does not get rejected and then need to be re-filed. (Doc. 30, Julie Dalton Dep., PAGEID 286) ("And it's, like, we don't know what you were trying to file, so we don't -- we would reject that on not really having the right information. And, you know, we don't want you to pay all of that money for a bad filing.").[5] Dalton explained that the Issue Desk clerk will also check the classification used and process any additional filing costs which may be due. (Doc. 30, Julie Dalton Dep., PAGEID 284).

Therefore, the Clerk has carried his burden of demonstrating that there is a substantial probability that its interest in the orderly administration of justice would be impaired if he was unable to review electronically-submitted complaints, assign a case number, assign costs, process payment and provide a receipt or time stamp.

As to whether reasonable alternatives exist to adequately protect his interest in the orderly administration of justice, Courthouse News points to the measures taken by the Franklin County Clerk after this Court entered the injunction in *Courthouse News Service v. O'Shaughnessy*. Courthouse News claims that the Franklin County Clerk complied with the injunction within two months by putting in place a review queue that gives Courthouse News on-receipt access to new civil complaints. When asked about this type

[5]The Clerk does not attribute any delay to reviewing documents for confidential information. (Doc. 50, PAGEID 2851). The Clerk has explained that the Ohio Rules of Superintendence place the burden of ensuring confidentiality on the filers: the "clerk is not required to review the case document to confirm that the party has omitted personal identifiers, and shall not refuse to accept or file the document on that basis." Ohio Sup. R. 45(D)(3).

of system, the Clerk testified that case management in Hamilton County is "a little more complicated" than in the other counties. (Doc. 31, Pavan Parikh Dep., PAGEID 940).[6] While Courthouse News responds that this explanation is "vague," there is no evidence in the record to the contrary.[7] Unlike other electronic filing systems, there is no evidence that in the current version of CMS the Clerk has access to alternative means to provide immediate access to newly filed complaints. *Cf. Courthouse News Serv. v. Omundson*, No. 24-6697, 2026 WL 2603864, at *2-3 (9th Cir. Sept. 3, 2026) (explaining that there was evidence of two alternative configurations of the current electronic filing system which would provide the press with immediate access to submitted complaints: one at no additional cost and the other with an annual subscription fee of $108,000). Instead, the Clerk testified that converting to an auto-accept system which would provide instant access to Courthouse News would require a complete overhaul of the entire system, with a cost that has been estimated as much as five million dollars. (Doc. 30, Julie Dalton Dep., PAGEID 352, 512). There is no evidence to the contrary in the record. Given these cost considerations, the Court concludes that no reasonable alternatives exist to adequately protect the Clerk's interest in the orderly administration of justice. *See Planet III*, 947 F.3d at 594-96 ("First Amendment does not require courts, public entities with

[6]The Clerk explained that the Franklin County Clerk is only responsible for accepting filings on behalf of the Franklin County Common Pleas. (Doc. 31, Pavan Parikh Dep., PAGEID 940). However, in Hamilton County, the Clerk accepts filings on behalf of the municipal court, the court of appeals and the domestic relations court. (Doc. 30, Julie Dalton Dep., PAGEID 388).

[7]Courthouse News attempts to support its position that it would be possible for the Clerk to provide immediate access to new complaints by citing to the deposition testimony of Julie Dalton. Dalton did testify that this was done for a period of time in 2007 after all the documents were removed from the Clerk's website because it was discovered that personal information on the Clerk's website was being used for identity theft. (Doc. 30, Julie Dalton Dep., PAGEID 384). However, there is no testimony that it could be done today.

limited resources, to set aside judicial operational needs to satisfy immediate demands of the press"). Accordingly, the Clerk's provision of access to electronically-filed civil complaints is narrowly tailored to serve the compelling government interest of the orderly administration of justice. Courthouse News has not met its burden on summary judgment that the Clerk's policies and practices of providing access to new electronically-filed civil complaints violate its rights under the First and Fourteenth Amendments; and the Clerk has met his corresponding burden on summary judgment.

## III. Conclusion

For the foregoing reasons, Plaintiff Courthouse News Service's Motion for Summary Judgment (Doc. 45) is **DENIED** and Defendant Pavan Parikh's Motion for Summary Judgment (Doc. 44) is **GRANTED**. Judgment is entered in favor of Defendant and against Plaintiff. This case is **CLOSED and TERMINATED** from the active docket of the Court.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court